Good morning. I would like to reserve three minutes for rebuttal. Keep your eye on the clock. We'll try to help you. Thank you. The California courts in this case excluded, as hearsay, the confession of Mr. Alvarez's co-defendant, Christopher Madrigal, in which Mr. Madrigal Lift up the microphone a little bit because you're on TV and they want to be able to hear you. Okay. How's that? That's better. Madrigal, the co-defendant, admitted robbing and stabbing the victim in the robbery murder in this case, the robbery homicide. And the California Court of Appeals ruling constitutes an unreasonable application of Chambers v. Mississippi because the excluded confession was reliable under the circumstances and it was critical to Mr. Alvarez's defense. But counsel, what you did, what you wanted to do, rather, was to take a small piece of the testimony that you want that seems to be helpful to you and exclude the other part where the man intentionally inculpated your client. You're trying to get us to bifurcate that. Can you cite any case relying on Chambers or any other case that says that that's permissible? Yes. Yes, Your Honor. Now, Chambers, of course, that doesn't happen. But Chambers is the right to present a defense. And in that case, that's not. But you've relied on that in part, have you not? Indeed, when the only the ruling here was a hearsay, was a hearsay ruling by the State court. And the self-incriminating statements were the only statements by the co-defendant, by Madrigal, that arguably satisfied the hearsay exception, the statement against Madrigal's interest. Now, that was the defense lost that ruling, but the defense only had a basis for admitting the hearsay statements that were against Mr. Madrigal's interest. It couldn't have been. There was no basis to introduce the whole thing. Your appeal is based on a hearsay? No, no. That's the State ruling is based on hearsay. My appeal is based on Chambers. Okay. Well, that's how we get back to what we're talking about. And it seems to me your argument is that Chambers gives you a second bite at the apple because you, the court did not permit you to take a piece of what was said by, what the gentleman's name, I know it starts with M. Oh, yes. What he said. He didn't want the whole thing. But if you put the whole thing in, he inculpated your client. And you didn't want that. Indeed. So where's the case relying on Chambers that says that's permissible? I don't, I don't see, I don't see that particular, I don't see that particular case, Your Honor. It is a very common practice, not necessarily in an application of Chambers, but when you're talking about, there are many cases where when you're introducing the statement against interest by a co-defendant that you only introduce that part of the statement. But it still has to be in context, though. Yes. Two comments to that. First, it was the statement against interest that were most reliable. And the other statements, he had a clear motive to falsely implicate Mr. Alvarez, and only with his own, with his own statements, he had no incentive to falsely, falsely implicate himself. The second point is that had the, had the trial court, and I'm getting back to the but this is, I'm keeping my eye on Chambers, it's just that, had the, had the court admitted as, under the hearsay exception, the statements against interest. At that point, other statements for context would have become admissible. For instance, the prosecutor had no basis to introduce the statements implicating Mr. Alvarez under the hearsay rule until the self-incriminating statements by Megerdahl comes in. Then you've got Evidence Code 356 in California and Evidence Code 1202, which both would allow greater context to come in. The trial court just never got to that decision point. You're not arguing, per se, admissibility of the Madrigal statement, are you? Not, not under the California hearsay rules, but under, yes, under Chambers. So, so if the, if the district court has some discretion, even under Chambers, don't we look at whether the court abused its discretion? Is that your argument, that the court abused its discretion by its admissibility ruling?  And that no fair-minded judge would think otherwise under our standard of review? I, yes, Your Honor, if the court had applied Chambers. It's a little tricky in that regard because the Chambers is different than the hearsay rule. And here, the State court never applied Chambers. If Chambers is different than the hearsay rule, doesn't that doom your argument because there's not clearly established Supreme Court law that would guide us in these circumstances? I think there is. I think, I think Chambers, Chambers guides us here. And the hearsay rule was the basis for the State court's ruling, but Chambers is the basis for the Federal right we're talking about. And the, the State court's not required to apply Chambers, but that's the framework we have to look at this in as Chambers. Can you describe what you think Chambers stands for? You just say the Chambers rule. What do you think the Chambers rule is? The Chambers rule stands for the, that, that a defendant in a criminal case has a right, has a right to present a co-defendant self-incriminating, a co-defendant or arguable third-party culpability self-incriminating statement if that statement is reliable under the circumstances and it's critical to the defense. I believe Chambers stands for that. Well, I mean, Chambers technically says where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanically to defeat the ends of justice. So to me, it just seems like Chambers is saying the judge needs to balance all the interests involved and then decide whether or not to exclude the evidence, not that you can't exclude evidence under some of the appropriate balancing tests. Well, I agree. The test under Chambers would be whether it's reliable, whether it bears persuasive assurances of trustworthiness, essentially whether it's reliable under the circumstances. That's the test for Chambers, and I think that's, I think that's what we look at here. So even if that's true, how do we know the statement here was reliable? I think he changed his statement five different ways during the course of one interview. I believe it's reliable. He changed it many times, but if you look at the progression of the interview, he begins by claiming he wasn't even there. He was watching a movie with his girlfriend. Then he was there, but he tried to help the victim. And the police are confronting him with the inconsistencies and the implausibilities of that, and it's the end of the interview. He's taken down a road by the officers. They tell him they have a video, which that's the point he starts telling some of the truth, because he kept lying. But he tells, he implicates himself more and more as the interview continues. And reliable, I think, because he has no incentive to falsely incriminate himself. He has every incentive to incriminate Mr. Alvarez, to shift blame. But he has no incentive. He admitted committing first-degree murder. He admitted facts that make him guilty of first-degree murder and multiple theories, aiding and abetting, felony murder. But it made him let the he also admitted that Mr. Alvarez was more culpable.  He tried to. Well, he certainly shifted blame, shifted blame to Mr. Alvarez. But So I guess my point, even if you're right that Chambers stands for a proposition that reliable hearsay evidence has to be admitted, it seems like a reasonable decision to say this one is not so reliable. I, and that's, that's, that's part of the, that's certainly a central point of the  I am arguing that it was reliable. Indeed. If it's not reliable, if it's not, if it's truly not reliable, then, well, that's what Chambers says. But our question is whether or not reasonable jurors can decide it's not reliable. Yeah. It's hard to say that it's not reliable, that it's completely unreasonable given the shifting and, and ultimately he doesn't even fully, you know, he, he shifts some blame to the, to Alvarez. I, again, I'd go back to, of course he's trying to, of course he's trying to, of course he's trying to lie his way out of it. But to say that he stabbed the victim, to say that he robbed the victim, that's not a lie you would tell to, to get out of criminal liability. I think those statements are totally reliable because no rational person would have made them unless they were true. But, but counsel, as we're all saying to you, I think, is, you know, this is under AEDPA. Yes. You've got a tough burden and you've got to show basically that the State court just completely misconstrued Supreme Court law or misconstrued the facts. And what you really seem to be saying is that the trial court got it wrong in terms of the admissibility of this evidence, but it's an abuse of discretion standard. That's a whole different world than a constitutional violation, which you're alleging, is it not? Well, the, the, under, for the hearsay ruling, the, the standard of review is abuse of discretion in California court.  But I think that's not, I think whether it's abuse of discretion or de novo, the standard of view is not relevant to the constitutional question. That's the standard of view for a hearsay ruling. And I'm, I can't argue that that hearsay ruling was wrong. But ultimately, as we've heard, I mean, the standard is whether a fair-minded jurist could find otherwise in a course they could. And doesn't that damn your case? No, I don't think so. I think the trial court's ruling, a fair-minded jurist could, could rule, could rule this way under the California hearsay rule, but not under Chambers. It's two different standards. And I think Chambers makes that clear. The Mississippi court in Chambers didn't abuse, they made a correct ruling under Mississippi law. They violated the federal constitution by doing so. And I think that's, I think that's precisely the same. I asked you earlier, and I want to be sure that you understood, I asked you whether there is any case based on Chambers where you have a factual situation like this where you have a, Mr. Madigal lying all over the place. He says good things to help your client at one part, but the other part he inculcates your client.  Have you got any case that says Chambers applies in that context without having the whole thing, having the whole context? I haven't found any. No. Let me answer that. The simple answer is no. I do not have that case. Okay. However, I would just cite AEDPA case law, Panetti v. Quarterman, and Bradley v. Duncan, I think, this case. That it's, I don't need this claim on appeal here. It doesn't require of such a precise fit to the facts of the case. We have to show there's clear constitutional law that was violated here, and you're not telling me there is. You're telling me there isn't. I believe this. I believe that the scenario in this case is within the constitutional, clearly stated constitutional principle of Chambers. And what is that principle? Well, I think it's that without regard to the excerpts, that it wasn't the entire interview, that the self-incriminating statements by Mr. Madrigal were admissible under Chambers because they were, because they met this Chambers test. But, counsel, with respect, what you seem to be saying is that you've got this pot of lies, and your client can pick out of the pot A, B, and C, and use it to his benefit, but ignore everything else that was said, which, of course, undercuts the whole concept of the reliability of Mr. Madrigal. I think the motion made by the defense in this case to admit these excerpts was in accordance with the hearsay rule. They proffered the statements that satisfied the hearsay rule, the exception to the hearsay rule, the statement against interest. That was the defense motion. Now, if those statements had been admitted, it wouldn't necessarily have only been those excerpts because the prosecutor had a right to bring in other evidence. Yeah, under the rule of completeness, right? And so all the evidence that Madrigal said that your client was guilty would also come in. Yeah, potentially some of it. I'd say it would be a matter of context because the statement against interest would be admissible, and then other statements could come in to add context to that or impeach the hearsay document under the other evidence code. It's hard to see the prejudice here if he's saying your client's guilty, too. Because then the argument is, well, of course he is. He's trying to get a deal. Of course he is. But the statements that he said implicating himself, there's no reason he would ever lie about that. You want to save the rest of your time there, counsel? Yes, I do. Thank you. Very well. All right. Let's hear from the government, and that's meth, right? Yes. That's meth. Usually we think of meth in a different context in our court. Yep. Well aware. Thank you. Good morning, Your Honors. Melissa Meth for Respondent Appelli, and may it please the Court. The state court here upheld the trial court's exercise of discretion to exclude hearsay evidence that did not fit the criteria for the statement against interest exception. And as this court has said in Brown and Moses, the Supreme Court has not squarely addressed the discretionary exclusion of evidence and the right to present a complete defense. And, therefore, Appellant is not entitled to habeas relief. However, Your Honors, even if Chambers v. Mississippi supplies the applicable rule here, Appellant is still not entitled to relief. The statements do not bear the same persuasive assurances of trustworthiness that existed in Chambers. These were statements made in a custodial interrogation as opposed to spontaneous statements to a close acquaintance. His story changed numerous times throughout the course of that interrogation from not being present at all to being present but not really doing anything, ultimately to stabbing the victim but because Mr. Alvarez pressured him to do so. And so his shifting narrative makes all of those statements unreliable. And then there's that fact that he always places more of the blame on Appellant. It was always Appellant whose idea it was to rob the victim, who stabbed the  And Appellant was the more culpable party. And so because of that, courts have said that in that context, those types of statements of I'm guilty but X is greater, is guiltier than I am, that those are not truly against the declarant's penal interest. Doesn't the way the jury structured its decision regarding the knife count, doesn't that suggest that maybe this evidence might have been helpful to Alvarez and its exclusion would be prejudicial to his theory of the case? No, Your Honor. I actually think the opposite. I think because of the jury's verdict on the knife enhancement, Appellant already effectively received the benefit he would have received had these statements come in. Because while Reyes and SM both testified that Appellant was holding the bloody knife when he got back in the car, there was evidence that Christopher had had a at the 7-Eleven. And so I think, you know, to the extent, you know, we of course don't know exactly what the jury's thought process was, but to the extent they had a doubt about who might have stabbed the victim, I think that's already reflected in that  And Christopher's statements wouldn't have done anything more to add to that. That's pretty overwhelming evidence of his involvement, right? Yes, Your Honor. I mean, we have Reyes and SM both placing Appellant in the car saying he wanted to rob someone, them attacking the victim, having the knife, the blood evidence, the victim's blood is in the front seat of the car, which is where Appellant was sitting. And then after the fact, his statement to Joel that he had stabbed someone wanted to hide the evidence, and he had the victim's belongings, the cell phone, and the checkbook were found at Appellant's house. And so with all of that, there is... Can I ask, why does the fact that he gives more culpability to Alvarez really make a difference against... Why does it not make it a statement against penal interest? He basically admitted first-degree murder, murder felony. I mean, what more could he have done? There's no other charge he could have been charged. So it doesn't matter whether or not the other guy is more culpable because they're both guilty of first-degree murder felony. Yes, Your Honor, but we have to look at that statement as a whole. And so this is a statement of a co-defendant in an interrogation hoping to do the best he can do in terms of what he says, I think. And so even though, yes, certainly his statements are self-inculpatory. To the highest degree. Because usually, I mean, if you're saying someone's trying to be more culpable than the others, he's trying to say I should be charged with something lower. But the mission is, the floor he's admitting is so high, just the fact that Alvarez has a higher floor, it doesn't matter because they're both guilty of murder felony. Well, I think, Your Honor, I mean, we don't know what exactly he hoped to gain. But this was in the context of, you know, the police officer saying that they had video of him. And so he's trying to sort of, you know, and they kept, they were, you know, encouraging him to tell them the truth about what was happening. And so I think it's just the motivations is still that if Alvarez is more culpable than him, that that still might benefit him.  I mean, you know. Maybe that he would try to get cooperation points or something. Right. Exactly. What is the government's position as to the meaning of Alvarez, I mean, excuse me, as the meaning of Chambers in this case? Well, I think ultimately Chambers is inapplicable in this case. Chambers, so first, in Chambers there was a problem with the procedural rule itself. The hearsay rule in that case only allowed for statements against pecuniary interest and not statements against penal interest. And so what the Supreme Court said was that in that context where the third party culpability statements were very clearly against the declarant's penal interest, there was other assurances of trustworthiness, and it was critical to the defense because it was truly exculpatory of the defendant. If the confession was true, then the defendant was not guilty of the crime. But in that context, that evidence should have been admitted. But the statements there were clearly against the declarant's penal interest. And Chambers doesn't provide any guidance in terms of how to determine if a statement is in fact against the declarant's penal interest. And applying Chambers to this case, what is your explanation? What's your view? I'm sorry, Your Honor. In other words, in what way, if at all, was Chambers violated in this case? It wasn't, Your Honor. I think this case is readily distinguishable from Chambers. Because we don't have the assurances of trustworthiness that existed in Chambers, ultimately, too, this evidence is not exculpatory. I mean, Christopher's statements as a whole are not exculpatory of appellant. And so I don't think the evidence is as critical to the defense. So in Chambers, you had a situation where there was truly credible evidence that would have had a big impact on the case. Whereas here, you've got somebody who inculpates himself, inculpates Mr. Alvarez. It's just all over the map. You've got all kinds of statements, line, line, line. And it's just not the same situation. Is that your view? Yes, Your Honor. And I think, you know, appellant effectively said that he doesn't disagree with the hearsay ruling itself. And that, I think, is effectively fatal to his claim. Because the trial court found that these are not, in fact, statements against the declarant's penal interest, we are now fully distinguishable from Chambers in that sense. And so I think ultimately, too, as Your Honor noted, the standard here is the state court's decision only had to be reasonable. It doesn't have to be correct. And certainly it was reasonable under these circumstances. The fair-minded jurist concept, right? Yes, exactly, Your Honors. And so we would request that this court affirm the judgment. Very well. Thank you. Thank you very much. We have a little rebuttal time, counsel. I have a couple of points to make. I'd be happy to entertain any questions from the panel.  Regarding whether this is truly exculpatory, as Your Honor noted, the issue here is aiding and abetting or first-degree murder. Both men can obviously be guilty. So one being one having done all the stabbing, it doesn't necessarily – it's exculpatory for Mr. Alvarez here because of his voluntary intoxication defense. And he – so it's not a question of did he participate or not, but was he – there was undisputed evidence that he was extremely intoxicated, consumed a prodigious amount of alcohol. The jury was instructed that it could consider that to negate specific intent, which would be required for first-degree murder under any theory. And the defense presented expert testimony to the same effect. And I think this does go to that because Mr. – Mr. Madrigal's role in the – the extent to which he participated affects the credibility of the key prosecution witness, Cassandra Reyes. She described the incident. She claimed to have seen it and described only Mr. Alvarez being the stabber. That's what she saw. And if the jury hears Mr. Madrigal's statement, it casts serious doubt on whether she was actually able to see it. And in fact, the jury already knew that she said three or four times in official – in official statements and interviews that she hadn't been able to see it. Then right before trial, when she's getting a deal from first-degree murder to manslaughter, she says, oh, yeah, I saw the whole thing, and Mr. Alvarez was the only stabber. I think Mr. Madrigal's statement could make the jury reject her testimony entirely. Even if it already found it, eh, they could reject it entirely, in which case the prosecution has very little evidence to rebut the voluntary intoxication defense. Okay. Your time is almost gone. Do you have anything else you wanted to say? No, just thank you, Your Honor. Have a good day. Well, thanks to both counsel for your argument. The case of Alvarez v. Lundy is submitted.
judges: Tymkovich, SMITH, BUMATAY